IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

REBECCA A. PATTERSON,       )    CIVIL ACTION NO. 9:08-1065-HMH-BM
                          )
                          )
          Plaintiff,      )
                          )
v.                       )    **REPORT AND RECOMMENDATION**
                          )
MICHAEL J. ASTRUE,        )
COMMISSIONER OF SOCIAL    )
SECURITY ADMINISTRATION,   )
                          )
         Defendant.     )
_____)

        The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

        Plaintiff applied for Disability Insurance Benefits (DIB) on June 29, 2004, and alleges

disability as of January 20, 2003[1] due to left foot arthritis and a mental impairment. (R.pp. 48-50, 99).

Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing

before an Administrative Law Judge (ALJ), which was held on November 6, 2006. (R.pp. 350-381).

The ALJ thereafter denied Plaintiff's claim in a decision issued January 13, 2007. (R.pp. 13-24A).

The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making

the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-7).

        The Plaintiff then filed this action in United States District Court. Plaintiff asserts that

---

    [1]Plaintiff originally alleged disability as of October 8, 2002; however, the disability onset date was amended at the hearing to January 20, 2003. (R.pp. 16, 378).



there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty eight (48) years old when she alleges she became disabled, has a ninth grade education with past relevant work experience as



a cashier, machine operator, sewing machine operator, and convenience store manager. (R.pp. 48, 57-58, 68, 100, 104). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she had an impairment or combination of impairments which prevented her from engaging in all substantial gainful activity for which she was qualified by her age, education, experience and functional capacity, and which had lasted or could reasonably be expected to have lasted for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff suffers from "severe" impairments[2] and was unable to perform her past relevant work, she nevertheless retained the residual functional capacity to perform a significant range of light work[3], and is not disabled. (R.p. 24).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating the opinion of Plaintiff's treating physician, by improperly evaluating Plaintiff's physical and mental limitations, by improperly assessing Plaintiff's credibility, and by improperly rejecting the conclusions of an examining vocational evaluator and relying instead on VE testimony that Plaintiff can do work requiring abilities that the ALJ himself said Plaintiff lacks. After careful review and evaluation of the ALJ's decision and the record in this case, the undersigned is constrained to agree with the Plaintiff that the ALJ committed reversible error in reaching his decision in this case.

After consideration of the evidence, the ALJ determined that Plaintiff has the severe impairments of traumatic tarsometatarsal joint arthritics, post-traumatic stress disorder, and a

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a) ["An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"]; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



depressive disorder. (R.p. 24). With respect to her mental impairment, the ALJ determined that the medical evidence supported a finding that Plaintiff would have a slight limitation in her activities of daily living; moderate to *mostly marked* limitations in social functioning; slight limitations in concentration, persistence or pace, and no documented episodes of decompression or decompensation in work or work-like settings. (R.p. 21). Plaintiff argues that her mental impairment is in fact more severe than that found by the ALJ; however, that question need not be reached because there is not an adequate basis in the record to sustain the decision under the ALJ's own findings.

Specifically, the ALJ determined that Plaintiff has the residual functional capacity to perform simple, repetitive, unskilled work as long as there is no interaction with the general public and no close interaction with co-workers. (R.pp. 20, 24). Similarly, in his hypothetical to the VE at the hearing, the ALJ asked the VE to assume that Plaintiff would be limited to work activity which "did not require work with the general public, or work which required close interaction with co-workers. In other words, teamwork type of activities." (R.p. 373). The work further had to be "entry level, unskilled, consisting only of simple, repetitive tasks." (R.p. 374). Such limitations and restrictions are perhaps sufficient to uphold a decision involving a mental impairment where only moderate limitations have been found. Cf. Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's *moderate* limitations in concentration, social functioning, and tolerance of stress]; Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's *moderate* limitation in maintaining concentration, persistence or pace]; Kusilek v. Barnhart, 175 Fed. Appx. 68, 71 (7th Cir. 2006) [string cites].



However, in the case at bar the finding was specifically that Plaintiff suffered from "mostly marked limitations in social functioning", a finding which the ALJ does not then adequately address by simply finding that Plaintiff has the residual functional capacity to perform "teamwork" type activities that do not require close interaction with co-workers or interaction with the general public. Based on the ALJ's hypothetical incorporating these restrictions, the VE at the hearing testified that Plaintiff would be able to perform jobs as a final inspector, a carder, and an assembler of small objects. (R.p. 374). However, the ALJ did not ask the VE whether someone with a "marked" limitation in social functioning would be able to perform these jobs, and Plaintiff correctly points out in her brief that the ALJ fails to explain how this "mostly marked" limitation permits Plaintiff to interact appropriately with supervisors, engage in "teamwork" type activities, or even ask questions or request assistance. Pfeiffer v. Astrue, 576 F.Supp. 2d 956, 962 (W.D.WI. 2008)["[A]ll competitive work, even unskilled work, requires the ability to respond appropriately to supervision, co-workers and usual work situations"]; Cf. August v. Astrue, No. 06-10332, 2007 WL 737766, *3 (D.Ma. Mar. 8, 2007)[Noting how ALJ distinguished between the claimant being able to work in the presence of co-workers and engage in appropriate occasional social interaction from the context of a work team where work related interaction with co-workers is constant and physically close]. It is also noted that none of Plaintiff's treating or examining physicians made any distinction between Plaintiff's ability to interact with the public from her ability to interact with co-workers and/or supervisors. See R.pp. 205, 223-224, 327, 344-346. Pfeiffer, 576 F.Supp 2d at 962 [Commissioner's decision reversed in part because physician did not suggest that Plaintiff had a better ability to interact with co-workers and supervisors than with the public but rather found Plaintiff's social limitations to be "marked" in all spheres]. Hence, given the "mostly marked" limitations in Plaintiff's social functioning found by the ALJ, it was incumbent upon him to then adequately



describe Plaintiff's limitations to obtain a valid assessment from the VE of Plaintiff's ability to perform jobs. Cf. Walker v. Barnhart, No. 04-11752, 2005 WL 2323169, at * 10 (D.Ma. Aug. 23, 2005)[noting where ALJ defined the ability to deal with the public, co-workers and supervisors as being able to work in the presence of "co-workers and exchange an appropriate occasional, social interaction, but not within the context of a work team when work related interaction with co-workers would be constant or physically close, and that claimant could deal appropriately with supervisors on an occasional basis subject to normal monitoring and review of work in an industrial setting for example, but not at circumstances in which, because of product considerations or for other reasons, the monitoring or intervention by supervisors is physically close or frequent or continuous"];[4] Attia v. Astrue, No. 06-778, 2007 WL 2802006, at * 31-32 (E.D.Ca. 2007)[Noting restrictions imposed by the ALJ to be for jobs "requiring relatively simple instructions and relatively restrictive contact with the public and co-workers, and can work in the presence of others but cannot be part of a work team or cooperative work process"].

Indeed, the limitations found by the ALJ appear to mirror those of state agency psychologist Dr. Lisa Varner, who opined on September 8, 2004 that Plaintiff should be asked to perform no more than simple, repetitive work tasks in a setting that does not require ongoing interaction with the public. (R.pp. 20, 238). However, Dr. Varner based these limitations on her finding that Plaintiff had no more than "moderate" difficulties in maintaining social functioning; (R.p. 236); while the ALJ determined that Plaintiff had a more significant "mostly marked" degree of limitation in this area. (R.p. 21). The ALJ's failure to properly quantify or explain Plaintiff's residual functional capacity in light of his own finding that she was "mostly marked" in her ability

---

[4]These were examples given by the ALJ for dealing with only *moderate* restrictions, not the marked restrictions in social functioning found by the ALJ here.



to function socially, and to adequately include this limitation in a hypothetical to the VE, requires reversal. Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 654-655 (8th Cir. 2004) [noting that ALJ's improper consideration of evidence in evaluating impairment in social functioning warranted remand]; Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984)["We decline . . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such approach would not advance the ends of reasoned decision making."]; Blalock, 483 F.2d at 775 [decision must be supported by substantial evidence]; Walker,v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989)[in order for a vocational expert's opinion to be helpful and relevant, "it must be in response to proper hypothetical questions which thoroughly set out all of a claimant's impairments"].

The decision of the Commissioner is also subject to reversal because of the ALJ's improper evaluation and consideration of the evidence relating to Plaintiff's ability to perform fine manipulation with her hands and fingers. The ALJ found that Plaintiff did not have any limitations using her hands and/or her fingers for dexterous activity on a repetitive basis. (R.p. 23). However, the record contains a report by certified Vocational Evaluator Randy Adams, who found after an evaluation on June 8, 2006, that Plaintiff's hand and finger dexterity is very low and that she should not be considered for any type of job which would require her to utilize her hands and fingers on a repetitive basis and manipulate small parts. (R.p. 110). When the VE was asked at the hearing whether those findings would affect his opinion as to whether or not Plaintiff could perform the jobs that he had identified, the VE stated that it would eliminate any jobs in the national economy that required any kind of fingering (although no further explanation was provided). (R.pp. 375-376). The ALJ rejected Adams opinion, however, finding that Adams had apparently taken Plaintiff's allegations and subjective complaints (as to her abilities) as fact rather than as allegations to be accepted or rejected after testing and observation. (R.p. 23) However, this finding is not correct, as



7

Adams' report specifically states that his findings were based on "Purdue Pegboard"[5] testing, not on Plaintiff's subjective statements. (R.p. 110).[6]  Therefore, the basis for the ALJ's findings, at least as set forth in his opinion, does not accurately reflect the evidence in the record, and as the VE testified that Plaintiff's ability to perform the jobs he identified would be affected by an inability to perform fine hand or finger manipulation, this error also requires reversal of the decision.  *Cf.* Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of ALJ's failure to provide explanation or reason for rejecting or not addressing relevant probative evidence]; Dewey v. Barnhart, No. 05-3329, 2006 WL 1109767 (10th Cir. April 27, 2006) [case remanded where the record lacked medical evidence to support the ALJ's RFC finding]; Morales v. Apfel, 225 F.3d 310, 317-318 (3rd Cir. 2000)[ALJ must explicitly weigh the evidence and explain his rejection of  medical opinions].

       As for the remainder of Plaintiff's complaints concerning the decision, on remand the ALJ will be able to reconsider and re-evaluate Plaintiff's credibility and the evidence as part of the reconsideration of this claim.  Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002) [on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## Conclusion

---

[5]An instrument utilized to assess an individual's finger dexterity. (R.p. 110).  See Rutherford v. Barnhart, 399 F.3d 546, 550 (3rd Cir. 2005); Mankle v. Astrue, No. 08-4024, 2009 WL 905712 at * 3 (N.D. Iowa 2009).

[6]In rejecting Adams' opinion, the ALJ further stated that "no treating source has mentioned any limitation in the use of [Plaintiff's] hands." (R.p. 23).  However, Plaintiff correctly notes in her brief that her treating psychiatrist, Dr. Patrick Mullen, had concluded that her depressive syndrome had resulted, in part, in "psychomotor agitation or retardation".  Psychomotor agitation is a series of unintentional and purposeless motions that stem from mental tension and anxiety of an individual. This can include wringing one's hands, or even ripping, tearing or chewing at the skin around one's fingernails or lips to the point of bleeding.  **http://en.wikipedia.org/wiki/Psychomotor_agitation.** No further information concerning the severity of this condition, or whether it had affected Plaintiff's use of her hands, is provided by Dr. Mullen.  (R.p. 320).



Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the purpose of a proper evaluation, discussion and findings with respect to the evidence and Plaintiff's residual functional capacity, as discussed herein, and for such further administrative action as is deemed necessary and appropriate. See  Shalala v. Schaefer, 113 S.Ct. 2625 (1993).

_____
Bristow Marchant
United States Magistrate Judge

April 23, 2009
Charleston, South Carolina