IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Rebecca A. Patterson, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 9:08-1065-HMH-BM |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States

Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b) and Local

Rule 73.02 of the District of South Carolina.[1]  Rebecca A. Patterson ("Patterson") seeks judicial

review of the Commissioner of Social Security's ("Commissioner") denial of her application for

disability insurance benefits ("DIB") under Title II of the Social Security Act.  In his Report,

Magistrate Judge Marchant recommends reversing the Commissioner's decision and remanding

the case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.  For the

reasons stated the court reverses the Commissioner's decision and remands the case for further

consideration as set forth below.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a
final determination remains with the United States District Court.  See Mathews v. Weber, 423
U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those
portions of the Report and Recommendation to which specific objection is made.  The court may
accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge
or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"),

(R. at 16-24), and summarized as follows.  At the time of the hearing before the ALJ, Patterson

was a fifty-two-year-old woman with a ninth grade education.  (Id. at 17.)  Her past employment

includes work as a "convenience store clerk, plastics factory machine operator, and sewing

machine operator."  (Id.)  She alleges disability due to traumatic tarsometatarsa joint arthritis,

post-traumatic stress disorder, and a depressive disorder.  (Id.)

Patterson was assaulted on October 8, 2002, while working as a clerk in a convenience

store.  (Id. at 18.)  She was held at knife point and the assailant stepped on her left foot, injuring

it.  Patterson also watched as the assailant cut a customer in the store.  Following the incident,

Patterson developed depressive symptoms, a post traumatic stress disorder ("PTSD") and foot

pain.

On June 29, 2004, Patterson filed an application for DIB.  (R. at 66-68.)  The application

was denied initially and on reconsideration.  On January 13, 2007, after a hearing on

November 6, 2006, the ALJ found that Patterson was not disabled within the meaning of the

Social Security Act.  (Id. at 13.)  The Appeals Council denied Patterson's request for review of

the ALJ's decision on January 28, 2008, thereby making the determination of the ALJ the final

decision of the Commissioner.  Patterson filed the instant action on March 28, 2008.

## II. THE REPORT AND RECOMMENDATION

The magistrate judge recommends reversing the Commissioner's decision and

remanding the case "for the purpose of a proper evaluation, discussion and findings with respect

to the evidence [of Patterson's] residual functional capacity [("RFC")]."  (Report and

Recommendation 9.)  The magistrate judge states that the ALJ erred in:  (1) his "failure to properly quantify or explain [Patterson's RFC] in light of his own finding that she was 'mostly marked' in her ability to function socially, and to adequately include this limitation in a hypothetical to the VE," and (2) making an "improper evaluation and consideration of the evidence relating to [Patterson's] ability to perform fine manipulation with her hands and fingers."  (Id. 5-7.)

### III. DISCUSSION OF THE LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  In other words, the court "must uphold the factual findings of the Secretary [only] if they are supported by substantial evidence *and* were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted).  Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the finding even if the court disagrees with it.  See id.  However, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## B.  Objections

The Commissioner filed objections to the magistrate judge's Report.  First, the

Commissioner objects to the magistrate judge's determination that the ALJ failed to present a

proper hypothetical question to the Vocational Expert ("VE") regarding Patterson's social

functioning limitations.  The ALJ concluded that the evidence supported a finding that Patterson

suffered from "moderate to mostly marked limitations in social functioning."[2]  (R. at 21.)  As

such, the ALJ concluded that Patterson has the RFC to "perform simple, repetitive unskilled

work as long as there is no required interaction with the general public and no close interaction

with co-workers."  (Id. at 20.)  To determine whether Patterson could perform work despite her

social functioning limitations, the ALJ  asked the VE the following:

> I want you to assume an individual with [Patterson's] work history, education,
> age.  Assume that such an individual would be limited to work activity which,
> first of all, did not require work with the general public, or work which required
> close interaction with co-workers.  In other words, teamwork type activities . . . .
> Would there be any such jobs in the regional economy?

(Id. at 374.)  Based on the ALJ's hypothetical, the VE determined that Patterson could perform

jobs of a final inspector, carder, and assembler of small objects.  (Id.)

 "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon

a consideration of all . . . evidence in the record, and it must be in response to proper hypothetical

questions which fairly set out all of claimant's impairments."  Walker v. Bowen, 889 F.2d 47, 50

(4th Cir. 1989) (internal citation omitted).  "There is, however, no requirement that a

hypothetical question contain a function-by-function assessment as required when formulating an

---

[2] A marked limitation is one that seriously interferes with a claimant's ability to
"function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404,
Subpt. P, Appx. 1 § 12.00C.

RFC.  Rather, the hypothetical only needs to include all of the claimant's *credible* impairments."
Torres v. Astrue, No. 07-2865, 2009 WL 873995, *8 (D.S.C. Mar. 30, 2009) (unpublished).
"Accordingly, if the record does not support the existence of a limitation, the ALJ need not
include it in the hypothetical question."  Id.

The magistrate judge concluded that the ALJ did not adequately describe Patterson's
social functioning limitations to obtain a valid assessment of Patterson's ability to perform jobs.
(Report & Recommendation 5-6.)  According to the magistrate judge, the ALJ's finding that
Patterson exhibited "mostly marked" limitations in social functioning should have been included
in his hypothetical to the VE.  (Id. at 7.)

However, the ALJ's hypothetical included the fact that Patterson is unable to work with
the general public or have close interaction with co-workers and perform teamwork activities.
The ALJ was not required to ask additional questions using the words "marked limitations" in
order to pose a proper hypothetical.  In fact, because Patterson exhibits marked limitations in
social functioning, the ALJ posed a question explaining that she is unable to perform teamwork
activities or work with the general public.  Accordingly, the court finds that the ALJ's
hypothetical was sufficient and properly posed.

Second, the Commissioner objects to the magistrate judge's determination that the basis
for the ALJ's finding that Patterson did not have any limitations using her hands or fingers did
not "accurately reflect the evidence in the record."  (Report & Recommendation 8.)  Randy
Adams ("Adams"), a certified VE, conducted an evaluation of Patterson on June 8, 2006.  Adams
conducted the Purdue Pegboard Dexterity test ("Purdue test") on Patterson's hands and fingers.
(R. at 110.)  Patterson scored below the first percentile in all areas of the test.  Adams concluded

that "Ms. Patterson's hand and finger dexterity is very low and she should not be considered for

any type of job which would require her to utilize her hands and fingers on a repetitive basis and

manipulate small parts." (Id.)  At the hearing held on November 6, 2006, Patterson's counsel

asked the VE, "would [Patterson's low dexterity results] affect your opinion as to whether [she]

could perform the jobs [you previously mentioned]?" (R. at 376.)  The VE noted that accepting

the test results as true, the low dexterity testing "would eliminate any jobs in the national

economy that required any kind of fingering." (Id.)

The ALJ found Adams' opinion regarding Patterson's ability to work with her fingers and

hands to be "not credible and . . . completely inconsistent with the evidence." (Id. at 23.)  The

ALJ explained that Patterson "has alleged no injury whatsoever to her fingers, hands or upper

extremities, and no treating source has mentioned any limitation in the use of her hands." (Id.)

Accordingly, the ALJ did not give controlling weight to the results of the Purdue test or Adams'

conclusions with regard to the test results.

The magistrate judge found that the ALJ improperly evaluated Adams' conclusion

because "Adams' report specifically states that his findings were based on 'Purdue Pegboard'

testing, not [Patterson's] subjective statements." (Report & Recommendation 8.)  Hence, the

magistrate judge concluded that the ALJ's determination that the evidence was not credible did

not accurately reflect the objective evidence in the record, especially in light of the VE's response

that Patterson's hand or finger limitations would affect her ability to perform work.

The court finds that the ALJ's determination regarding Patterson's hand and finger

dexterity is supported by substantial evidence.  The record is void of any complaints by Patterson

regarding her hands or fingers.  As the ALJ noted, no other treating physician has mentioned any

6

limitation in Patterson's hands, fingers, or upper extremities.  In fact, Dr. David Shallcross, a

rehabilitation specialist, noted on October 3, 2005, that Patterson had "unlimited use of . . . both

upper extremities."  (R. at 308.)  Accordingly, the ALJ did not err in  finding that Adams, at least

in part, based his opinion on Patterson's subjective complaints.  Accordingly, the ALJ was not

required to include any upper extremity limitations in the hypothetical question to the VE. "

See Torres, 2009 WL 873995, at *8 ("[I]f the record does not support the existence of a

limitation, the ALJ need not include it in the hypothetical question.").

### C.  Patterson's Remaining Claims

Patterson raises four additional claims in support of her argument that the

Commissioner's decision is not supported by substantial evidence.[3]

### 1. Treating Physician

Patterson alleges that the ALJ improperly discounted the limitations imposed by her

treating psychiatrist, Dr. Patrick Mullen ("Dr. Mullen").  The ALJ must afford controlling weight

to a treating physician's opinion if it is not inconsistent with substantial evidence in the record

and is well supported by clinical and laboratory diagnostic techniques.  20 C.F.R.

§ 404.1527(d)(2) (2006); see Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)

(If a treating physician's opinion is not "well-supported by medically acceptable clinical and

laboratory diagnostic techniques . . . [and consistent] with the other substantial evidence in the

record . . . [it is not] entitled to 'controlling weight.'")  In determining the weight given to a

treating physician, the ALJ must consider (1) the relationship the patient has with the examining

doctor, (2) the length of the treatment relationship, (3) the frequency of the examination, (4) the

---

[3]  The magistrate judge did not address these issues in his Report and Recommendation.

nature and extent of the treatment relationship, (5) the relevant evidence, (6) the consistency of the physician's opinion with the remainder of the record, and (7) whether the physician is a medical specialist.  20 C.F.R. § 404.1527.

Patterson began receiving treatment from Dr. Mullen on March 4, 2005.  (R. at 316.) Following an examination of Patterson in April 2005, Dr. Mullen noted that Patterson "is not able to return to gainful employment at this point, and she will not be at maximum medical improvement [("MMI")] until I have stabilized her antidepressant regimen and she has had a good trial of systematic and comprehensive pain management directed to her left foot and leg." (Id. at 342.)  By September 1, 2005, Dr. Mullen recorded that Patterson was "feeling much better . . . [and] had made a big difference" and on November 23, 2005, Dr. Mullen noted that Patterson is "still coping well" and may be able to work as long as she does not work in a convenience store and her foot pain is taken into consideration.  (Id. at 339-40.)

On January 17, 2006, Dr. Mullen stated that Patterson "continues to have significant symptoms of PTSD [Post Traumatic Stress Disorder] and pain . . . [which] are disabling and prevent her from working."  (Id. at 338.)  He goes on to explain that Patterson "will never work in a convenience store again, and she really does not trust the public at all."  (Id.)  He concluded that she has pain in her left foot that will "prevent her from any kind of work she has ever done before."  (R. at 338.)  From March to June of 2006, Dr. Mullen consistently noted that a number of Patterson's medications were working very well.  (Id. at 337.)  However, on June 14, 2006, Dr. Mullen concluded that Patterson "is permanently and totally disabled as a result of her on the job injury."  (Id. at 336.)

The ALJ found Dr. Mullen's various "statements [to be] inconsistent and contradictory" and not supported by the evidence in the record.  (Id. at 20.)  The court finds that the ALJ's decision not to give controlling weight to Dr. Mullen is supported by substantial evidence.

On February 4, 2003, Patterson's physical therapist noted that she could "perform functional activities without difficulty and lift[] up to 20.5 pounds and carry[] up to 17.5 pounds."  (Id. at 147.)  On May 8, 2003, Dr. Michael Tollison ("Dr. Tollison"), Patterson's treating orthopedist, concluded that Patterson could return to work from a physical standpoint. (R. at 18.) Specifically, Dr. Tollison noted,

> [t]he patient has not returned back to work because of her psychiatrist. . . .  I feel she is at MMI as there is nothing else I have to offer her at this direct time.  I feel that as soon as her psychiatrist clears her to return to work that she could do so with regular work status.

(Id. at 199.)  Dr. Shallcross noted that Patterson had reached MMI and "she would be limited to walking no more than twenty minutes at a time. . . .  She has unlimited use of the right lower extremity and of both upper extremities."  (Id. at 308.)  Accordingly, Dr. Shallcross released Patterson from his care on October 3, 2005.

Moreover, Dr. Mullen initially stated that Patterson would be unable to work until she received proper medication.  Later, Dr. Mullen noted that Patterson's medication helped her to cope with physical and mental ailments.  Further, Dr. Mullen noted that Patterson would be unable to work in a convenience store or with the public.  The ALJ concluded that Patterson "is unable to perform any of her past relevant work."  (Id. at 24.)  The ALJ also concluded that Patterson is unable to perform work that involves close interaction with the public.  (Id. at 21.)

9

Based on the foregoing, as well as the evidence in the record, the court finds that the ALJ gave

proper weight to the medical conclusions of Dr. Mullen.

### 2. Patterson's RFC

Next, Patterson alleges that the RFC imposed by the ALJ does not take into account all of

her impairments.  The ALJ concluded that Patterson retained the RFC to "perform a significant

range of light work."  (R. at 24.)  More specifically, the ALJ found that Patterson "retains the

[RFC] to lift and carry up to 20 pounds and requires a sit/stand option to accommodate ay [sic]

residuals from her foot injury.  She is also limited to repetitive tasks, which does not require

close interaction with co-workers or interaction with the general public."  (Id. at 21.)  The court

finds that the ALJ's RFC assessment is not supported by substantial evidence.

An RFC "is the most [a claimant] can still do despite [her] limitations" and is determined

by assessing all of the relevant evidence in the case record.  20 C.F.R. § 404.1545(a)(1).  In

determining Patterson's RFC, the ALJ discussed Patterson's physical and mental limitations.

Patterson alleges that she is unable to perform light work because she is "limited to minimal

standing, which is inconsistent with light work."  (Pl.'s Br. 25.)  "Light work involves lifting no

more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

pounds."  20 C.F.R. § 404.1567(b).  "Even though the weight lifted may be very little, a job is in

this category when it requires a good deal of walking or standing, or when it involves sitting most

of the time with some pushing and pulling of arm or leg controls."  Id.  "To be considered

capable of performing a full or wide range of light work, you must have the *ability to do substantially all of these activities.*"[4]  Id.  (emphasis added).

The ALJ does not discuss whether Patterson has the ability to do a "good deal of walking or standing."  Id.  On March 13, 2003, Dr. Christopher Rubel ("Dr. Rubel") concluded that Patterson could work as long as she experienced minimal standing, worked at ground level, and did not have to perform repeated bending, stooping, squatting, pushing, jerking, twisting, or bouncing.  (R. at 121.)  On October 6, 2004, Dr. William Hopkins ("Dr. Hopkins") noted during Patterson's Physical RFC Assessment that she could occasionally lift and/or carry up to fifty pounds, frequently lift and/or carry twenty-five pounds, stand or walk about 6 hours in an 8-hour workday, and has unlimited use in her ability to push and pull.  (Id. at 249.)  Dr. Hopkins also noted that Patterson was able to squat and rise, had full range of motion in both feet and ankles, there was no evidence of abnormal sensation or motor activity, and no atrophy of leg or calf muscles.  (Id.)  The ALJ fails to explain the extent to which Patterson is able to stand which is a requirement in order to perform light work.  Accordingly, the court reverses the ALJ's decision for further explanation regarding Patterson's ability to perform light work.

---

[4] Citing to SSR 96-9p, Patterson also argues that the ALJ erred because he did not specify the frequency of her need to alternate between sitting and standing.  SSR 96-9p, however, deals with the need to "alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically."  1996 WL 374185 at *7 (emphasis added).  The ALJ concluded that Patterson has the RFC to perform light work and included an option that would allow her to sit when needed due to her foot injury.

11

### 3.  Subjective Complaints

Lastly, Patterson alleges that the ALJ erred in rejecting her subjective complaints. "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594.  "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  Id.  In order "for pain to be found to be disabling, there must be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*."  Id. "It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated."  Id. at 595.

To determine Patterson's RFC, the ALJ considered, in part, Patterson's mental and physical limitations as evidenced by objective evidence as well as Patterson's discussion of her symptoms.  (Id. at 18.)  In doing so, the ALJ ultimately concluded that Patterson was "less than fully credible.  She testified to even more restricted activities at the hearing than she had to other treating and examining sources."  (Id. at 21.)

At her hearing, Patterson testified that she could not sit for more than twenty minutes without feeling pain and discomfort.  (R. at 357.)  She also stated that she can no longer concentrate or focus on anything and she "basically do[es] nothing" all day.  (Id. at 358.) However, when asked by the ALJ what would prevent her from working on a job where she

would not be exposed to the public, would be able to sit or stand whenever she needed, and

would not have to interact with co-workers, Patterson did not mention pain or discomfort, rather

she replied, "I don't know, other than my memory, and my concentration . . . .  Just have a hard

time remembering things."  (Id. at 366.)  The ALJ did not find Patterson's complaints to be fully

credible.

  When objective evidence conflicts with a claimant's subjective statements, an ALJ is

allowed to give the statements less weight.  SSR 96-7p, 1996 WL 374186, at *1 (1996).

> In determining the credibility of [a claimant's] statements, the adjudicator must
> consider the entire case record, including the objective medical evidence, the
> individual's own statements about symptoms, statements and other information
> provided by treating or examining physicians or psychologists and other persons
> about the symptoms and how they affect the individual, and any other relevant
> evidence in the case record.

Id.  On January 12, 2004, Dr. Robert Moss ("Dr. Moss"), a clinical psychologist, stated that

Patterson's "[m]emory for recent and remote events appears grossly intact.  I see no evidence of

hallucinations, delusions, or psychotic thought processes.  Her judgment appears intact and

insight appears fair."  (R. at 204.)  On August 30, 2004, Dr. Karl Bodtorf ("Dr. Bodtorf"), a

physiatric consultant, noted that Patterson has "mild to perhaps moderate limitations as it relates

to memory/concentration."  (Id. at 224.)  During Patterson's mental RFC Assessment, on

September 8, 2004, Dr. Lisa Varner ("Dr. Varner"), a medical consultant, noted that Patterson's

ability to remember locations and work-like procedures as well as her ability to understand and

remember very short and simple instructions was not significantly limited.  (Id. at 240-42.)

Dr. Varner found that Patterson "could not understand and remember detailed instructions" but was able to "carry out short and simple instructions, [and] maintain concentration and attention for periods of at least 2 hours." (Id. at 242.) Accordingly, Dr. Varner concluded that

> [o]verall, [Patterson's] symptoms and impairments are severe but would not preclude the performance of simple, repetitive work tasks in a setting that does not require on-going interaction with the public. Due to possible limitations in dealing with stress, it is recommended that [Patterson] be asked to perform no more than simple, repetitive work tasks in a setting that does not require on-going interaction with the public.

(Id. at 238.) Generally, Dr. Varner's conclusions are consistent with Patterson's RFC to perform unskilled[5] light work. The court finds that based on the objective evidence, the ALJ did not err in finding that Patterson's subjective complaints were not fully credible.

### 4. Concentration Limitations

The ALJ concluded that the evidence supports a finding that Patterson exhibits slight limitations in concentration. (R. at 21.) However, the ALJ does not explain how Patterson's slight limitations in concentration will affect her nor does he explain the basis of his conclusion. As such, the court is unable to determine whether the ALJ's finding is supported by substantial evidence. Additionally, Patterson points out that the three occupations given by the VE, final inspector, carder, and assembler of small objects, all require a reasoning level of two. (Pl.'s Br. 31.) According to the Dictionary of Occupational Titles, all three occupations require an employee to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions." Dictionary of Titles, 920.685-034, 1991 WL 687931 (emphasis added) (carder); 706.684-022, 1991 WL 679050 (assembler); 727.687-054, 1991 WL 679672 (final

_____

[5] Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568.

14

inspector).  Dr. Varner, however, concluded that Patterson is unable to understand detailed

instructions.  The ALJ failed to provide any explanation regarding Patterson's ability to

understand and remember detailed instructions.  Moreover, the ALJ did not pose a hypothetical

to the VE that included Patterson's limitations in concentration.  Accordingly, the court reverses

the ALJ's decision for further explanation regarding Patterson's ability to understand detailed

instruction so that this court may determine whether the ALJ's decision is supported by

substantial evidence.  Specifically, the ALJ is instructed to explain whether the jobs listed by the

VE comport with his finding of slight limitations and how his finding takes into consideration the

conclusions of Dr. Varner.

Therefore, it is

**ORDERED** that the Commissioner's decision is reversed under sentence four of 42

U.S.C. § 405(g) and the case is remanded to the Commissioner for further proceedings consistent

with this opinion.

**IT IS SO ORDERED**.


                                        s/Henry M. Herlong, Jr.
                                        United States District Judge

Greenville, South Carolina
June 4, 2009